UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

FRANK D'ANTUONO,

        Petitioner,

    -v-                                                05-CV-0437T
                                                                        **ORDER**

JAMES CONWAY, Superintendent of
Attica Correctional Facility

        Respondent.

---

## I. Introduction

*Pro se* petitioner Frank D'Antuono ("Petitioner") has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging the constitutionality of his custody pursuant to a judgment entered March 28, 2000 in New York State, County Court, Niagara County, convicting him, after a jury trial, of Robbery in the First Degree (New York Penal Law § 160.15 [4]), and two counts of Escape in the First Degree (Penal Law § 205.15 [2]).

For the reasons stated below, the petition is denied.

## II. Factual Background and Procedural History

On September 12, 1992, at approximately 1:45 a.m., Petitioner, along with an unidentified man, stole approximately $860.00 from Howard Johnson's Motor Lodge in Niagara Falls, New York by holding

1

two hotel employees at gunpoint and threatening to shoot them if they resisted. (Trial Transcript [TT.] 49-58, 360.)[1]

At approximately 4:00 p.m. that same day, a housekeeper at the Holiday Inn Hotel in Niagara Falls found two loaded handguns in an open duffel bag in room 715, which was registered to Petitioner under a false name. (TT. 88-94, 105, 112.) The manager of the Holiday Inn was informed that Petitioner had telephoned the desk earlier to say that he would pay later in the day for an additional night, but that nobody had come back to pay for the room. (TT. 104, 126.) The manager determined that the rental period had expired, secured the room with the deadbolt key, and called the police. (TT. 114.) When the police arrived, the manager granted them access to room 715 and the police conducted a warrantless search. (TT. 116.) The police left the Holiday Inn and asked the manager to notify them if Petitioner returned to pay for the room. (TT. 119.) Shortly thereafter, Petitioner returned and inquired about continuing to rent room 715. (T. 119-20.) The manager called the police and Petitioner was taken into custody. (TT. 120-21.)

---

[1] Citations such as these are to the transcripts, records, appellate briefs, orders and the like from the underlying state court criminal proceedings, which were submitted to the Court by Respondent's counsel in response to the Court's Order directing said documents and records be submitted to the Court. (Docket No. 4, Order). *See* Rule 5(c) of Rules Governing Section 2254 Cases in the United States District Courts. Citations to these types of records are enclosed within parentheses to set them apart from other citations.

On September 14, 1992, after being arrested on the Robbery charge, Petitioner escaped from custody while being fingerprinted at the Niagara Falls Police Department and was quickly captured. (TT. 20-21.)

On October 24, 1992, Petitioner escaped from the Niagara County Sheriff's Department and was never apprehended in New York. (TT. 21-22.)

On January 22, 1993, Petitioner was apprehended in Virginia on unrelated criminal charges to which he pleaded guilty and was incarcerated. (People v. D'Antuono, No. 92-286 (Cty. Ct., Niagara County, Dec. 31, 1998) (Decision and Order denying Petitioner's motion to dismiss on speedy trial grounds pursuant to N.Y.C.P.L. § 30.30).) On June 16, 1995, the Circuit Court for the County of Augusta, State of Virginia, ordered that Petitioner be transferred to New York for trial on the outstanding charges at issue herein. (Id.)

On September 13, 1995, the trial court denied Petitioner's request to proceed *pro se*. (People v. D'Antuono, No. 92-286 (Cty. Ct., Niagara County, January 19, 2001 (Decision and Order).)

On October 26, 1995, a Mapp hearing[2] was held and the trial court denied Petitioner's motion to suppress the physical evidence

---

[2] Mapp v. Ohio, 367 U.S. 643 (1961)(physical evidence obtained by searches and seizures in violation of the Fourth Amendment is inadmissible in a state court).

3

seized during a warrantless search of Petitioner's hotel room. (Suppression Hearing Transcript [S.H.] 96-101.)

On November 1, 1995, following a jury trial, Petitioner was convicted, and appealed his conviction to the New York State Supreme Court, Appellate Division, Fourth Department.[3] One of the grounds raised on appeal was that the trial court denied his motion to dismiss the indictment pursuant to § 30.30 without conducting a hearing. On December 31, 1997, the Appellate Division reserved decision on the appeal and remitted the matter to the trial court for a hearing to resolve factual issues raised in the § 30.30 motion. People v. D'Antuono, 245 A.D.2d 1108 (4th Dep't 1997).

On October 30, 1998, a § 30.30 hearing was conducted in which Petitioner argued that his right to a speedy trial was violated because the People had not made diligent and reasonable efforts to extradite him from Virginia while he was incarcerated there on other criminal charges. (See § 30.30 Hearing Transcript 13-14.) Following the hearing, the trial court again denied Petitioner's § 30.30 motion. The trial court found that authorities in New York, upon learning that Petitioner was incarcerated in Virginia, lodged at least three detainers and made requests for temporary custody with the Virginia Department of Corrections.

---

[3] Petitioner appealed on the grounds that: (1) the court erred in not suppressing the evidence seized from the hotel room; (2) the court improperly denied him the right to proceed *pro se*; (3) the court erred in not conducting a hearing on his speedy trial motion; (4) the court's sentence was unduly harsh and excessive; and (5) the verdict was contrary to the weight of the evidence. Appellant's Brief [A.B.], June 18, 1997.

4

(People v. D'Antuono, 92-286 (Cty. Ct., Niagara County, December 31, 1998 (Decision and Order).) Further, the trial court found that Petitioner "refused to make himself available for transport to New York voluntarily" by refusing to sign the necessary forms and "pursued all legal means to thwart the efforts of New York authorities to return [Petitioner] to this state." Id.

The transcript of the § 30.30 hearing was forwarded to the Appellate Division, which, upon resubmission, affirmed the trial court's holding on Petitioner's motion to dismiss pursuant to § 30.30, but reversed the judgment of conviction and ordered a new trial on the ground that the trial court "improperly denied [Petitioner] his right to proceed *pro se*." See People v. D'Antuono, 263 A.D.2d 968, 969 (4th Dep't 1999).

Prior to the retrial, Petitioner again made a motion to suppress the physical evidence seized by police from the hotel room. The trial court denied the motion. (People v. D'ANTUONO, No. 92-286 (Cty. Ct., Niagara County, January 19, 2000) (Decision and Order).)

Petitioner was again convicted of Robbery and two counts of Escape. Petitioner was sentenced to twelve and one-half years to twenty-five years on the Robbery count and two and one-third years to seven years on each count of Escape. Judgment was entered on or about March 28, 2000.

5

Petitioner raised three issues on direct appeal from this conviction: (1) the trial court erred in denying his motion to suppress; (2) the police lacked probable cause to arrest him based on the warrantless search of the hotel room; and (3) the trial court denied him his right to proceed *pro se* by admitting testimony from a witness who had testified at the first trial, but was unavailable to testify at the second trial. (Petitioner's Appellant's Brief, dated November 25, 2002; Docket No. 1, Petition, ¶ 9.) The Appellate Division unanimously affirmed Petitioner's conviction. People v. D'Antuono, 306 A.D.2d 890 (4th Dep't 2003), lv. denied 100 N.Y.3d 593 (2003).

On October 7, 2004, Petitioner filed an application for a writ of error *coram nobis*, which was denied by the Appellate Division on December 30, 2004. People v. D'Antuono, 13 A.D.3d 1235 (Table, Text in WESTLAW), 2004 WL 3023398), lv. denied 4 N.Y.3d 797 (2005).

This habeas petition followed in which Petitioner raises three claims. For the reasons stated below, the petition is denied.

**III. General Principles Applicable to Habeas Review**

**A.  The AEDPA Standard of Review**

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a claim that was "adjudicated on the merits" in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established

6

Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." Id. § 2254(d)(2). A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). The phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," limits the law governing a habeas petitioner's claims to the holdings (not *dicta*) of the Supreme Court existing at the time of the relevant state-court decision. Williams, 529 U.S. at 412; accord Sevencan v. Herbert, 342 F.3d 69, 73-74 (2d Cir. 2002), cert. denied, 540 U.S. 1197 (2004).

A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case. Williams, 529 U.S. at 413; see also id. at 408-10. "[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently." Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001). Rather, "[t]he state court's

application must reflect some additional increment of incorrectness such that it may be said to be unreasonable." Id. This increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir.2000) (internal quotation marks omitted).

Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir.) ("The presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."), cert. denied sub nom. Parsad v. Fischer, 540 U.S. 1091 (2003). A state court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

**B.  Exhaustion Requirement**

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that. . . the applicant has exhausted the remedies available in the courts of the State. . . ." 28 U.S.C. § 2254(b)(1)(A); see, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 843-44 (1999); accord, e.g., Bossett v. Walker, 41 F.3d 825, 828

8

(2d Cir.1994), cert. denied, 514 U.S. 1054 (1995). "The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts." Daye v. Attorney General, 696 F.2d 186, 191 (2d Cir.1982) (*en banc*), cert. denied, 464 U.S. 1048 (1984). Respondent concedes in his answer that Petitioner has exhausted the claims raised herein. Docket No. 5, Answer ¶ 9.

**IV. Petitioner's Claims**

**1. Ineffective Assistance of Appellate Counsel**

Petitioner claims he was denied effective assistance of appellate counsel because appellate counsel did not "rebrief," upon resubmission of the appeal, Petitioner's § 30.30 speedy trial claim after the Appellate Division had remitted the case for the § 30.30 hearing. Docket No. 1, Petition ¶ 22A and Addendum (Add.), 1-2; Docket No. 3, Petitioner's Memorandum of Law, 1-11. Petitioner raised this claim in his writ of error *coram nobis* applicatiom, which was denied by the Appellate Division, Fourth Department. People v. D'Antuono, 13 A.D.3d 1235 (Table, Text in WESTLAW), 2004 WL 3023398. A summary denial of Petitioner's motion constitutes an "adjudication on the merits" of this claim. Sellan v. Kuhlman, 261 F.3d 303, 314 (2d Cir. 2001).

The Strickland v. Washington, 466 U.S. 668, 688 (1984), standard of ineffective assistance of counsel applies equally to trial and appellate counsel. See Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994) (citing Claudio v. Scully, 982 F.2d 798, 803 (2d

9

Cir. 1992), cert. denied, 508 U.S. 912 (1993)). A petitioner alleging ineffective assistance of appellate counsel must establish both that appellate counsel was objectively unreasonable in failing to raise a particular issue on appeal, and that absent counsel's deficient performance, there was a reasonable probability that defendant's appeal would have been successful. Mayo, 13 F.3d at 533-34; see, e.g., Smith v. Robbins, 528 U.S. 259, 285 (2000); Aparicio v. Artuz, 269 F.3d 78, 95 (2d Cir. 2001).

Appellate counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." Robbins, 528 U.S. at 288 (citing Jones v. Barnes, 463 U.S. 745, 750-54 (1983)). The habeas court should not second-guess the reasonable professional judgments of appellate counsel as to the most promising appeal issues. Jones, 463 U.S. at 754; see also Jackson v. Leonardo, 162 F.3d 81, 85 (2d Cir. 1998). Thus, a petitioner may establish constitutionally inadequate performance only by showing that appellate counsel "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." Mayo, 13 F.3d at 533.

Here, Petitioner's appellate counsel raised the speedy trial claim in his brief on the appeal from the conviction following the first trial, which resulted in the Appellate Division remitting the case for a § 30.30 hearing. (Petitioner's Appellant's Brief, June

10

18, 1997.) Although appellate counsel did not "rebrief" the claim to the Appellate Division after the hearing and upon resubmission of the appeal it was not unreasonable for him to refrain from doing so since Petitioner's argument lacked merit. As the trial court found, Petitioner "chose to make himself unavailable and absent from this jurisdiction to avoid being brought to trial on this indictment." (People v. D'Antuono, No. 92-286(Cty. Ct., Niagara County, December 31, 1998) (Decision and Order).) Moreover, even though this issue was not have been rebriefed by counsel upon resubmission, the Appellate Division nonetheless considered the § 30.30 issue on the merits and affirmed the trial court's determination that Petitioner was "'unavailable' and that the People were diligent in their efforts to obtain [Petitioner's] presence in New York" but then vacated the conviction on other grounds. See D'Antuono, 263 A.D.2d at 968. Thus, Petitioner has failed to overcome the presumption that appellate counsel's failure to rebrief the speedy trial argument upon resubmission of the first appeal was reasonable. Further, Petitioner has not demonstrated that there is a reasonable probability that the results of his appeal would have been different had appellate counsel rebriefed the claim. Accordingly, the Appellate Division's rejection of this claim was neither "contrary to" nor an "unreasonable application" of clearly established Federal law. Habeas relief on this claim must be denied.

## 2. Denial of Right to Proceed *Pro Se*

At the outset, the Court notes that although Petitioner pleads this claim as a denial of his right to proceed *pro se*, this claim appears to be grounded in the notion that his constitutional right to confrontation was violated when the trial court admitted the testimony of a witness who testified at the first trial but was unavailable to testify at the second trial.[4] Petition, ¶ 22B and Addendum, 2-3; Docket No. 3, Petitioner's Memorandum of Law, 12-13. Specifically, Petitioner claims that, during the second trial, the trial court erred when it admitted the testimony of a witness whom his defense counsel had cross-examined at the first trial, but who was unavailable at the time of the second trial for him to cross-examine *pro se*. Petitioner contends the admission of this testimony denied him the opportunity to confront and cross-examine the witness--a police officer. Id. The Appellate Division addressed this issue on the merits and ruled that the testimony was properly admitted. D'Antuono, 306 A.D.2d at 890.

The Confrontation Clause provides that "in all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. In Crawford v. Washington, the Supreme Court overruled the long-

---

[4] "It is well established that the submissions of a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." Triestman v. Fed. Bur. of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (citation, internal quotation marks and emphasis omitted).

standing precedent of Ohio v. Roberts, 448 U.S. 56 (1980), that the admission of hearsay statements does not violate the confrontation clause if the prosecution shows that the witness is unavailable and the statement is reliable. Crawford, 541 U.S. 36 (2004). Crawford held that testimonial statements of a witness are admissible only if the witness is unavailable to testify and the defendant had "a prior opportunity for cross-examination." Id., 541 U.S. at 59. The testimony's "reliability" alone was no longer sufficient under the Confrontation Clause.[5]

Here, the trial court determined that the witness was unavailable and could not be brought before the court, and the Appellate Division affirmed finding that the "trial] court properly admitted the testimony of a witness who had testified at defendant's first trial but was unavailable to testify at the second trial as the result of serious injuries sustained by that witness in an accident subsequent to the first trial."[6] D'Antuono, 306 A.D.2d 198. Further, there is no question that Petitioner's

---

[5] In Ohio v. Roberts, the Supreme Court also held that unless the attorney at the first proceeding rendered ineffective assistance of counsel, testimony from that first proceeding can be admitted at the second trial where the witness is unavailable and, except in "extraordinary cases," an inquiry into the "effectiveness" of counsel at the earlier proceeding or trial is not required. Id., 488 U.S. at 73, n.12.

[6] The People made a motion pursuant to C.P.L. § 670.10 and 670.20 to use testimony of a police office from a previous proceeding at trial, attesting to the police officer's unavailability due to serious injuries sustained as a result of a snowmobile accident.

counsel at the first trial had the opportunity to fully cross-examine the witness at the first trial. See id.

As argued by Respondent, what Petitioner posits here --*viz.*, that his right to proceed pro se is, *a fortiori*, a violation of the right to confront witnesses against him--is simply not supported by any clearly established federal law. Docket No. 5, Respondent's Memorandum of Law, Ground II. The issue is whether petitioner's Sixth Amendment right to confront a witness was violated when the police officer's testimony from the first trial was admitted at the retrial. The witness was unavailable and he was cross-examined at the first trial by petitioner's attorney. *See Crawford*, 541 U.S. at 59. There has never been a finding nor is it claimed in the petition that petitioner's counsel at the first trial was ineffective. The gist of the argument is that Petitioner was not the one who cross-examined the witness at the first trial; the argument is not that the witness was not subject to cross-examination. He was. Accordingly, the Court finds that the state court's determination to admit the testimony of the police officer at the second trial was not contrary to or an unreasonable application of clearly established federal law.

### 3. Fourth Amendment Claim

Petitioner claims that his conviction was obtained in violation of his Fourth Amendment right against unlawful searches

14

and seizures. Petition ¶22C, and Addendum, 3-4; Docket No. 3, Petitioner's Memorandum of Law, 19. Specifically, Petitioner claims that he maintained his exclusive right to privacy in the hotel room because his rental agreement with the Holiday Inn had not expired prior to the warrantless search. Id. Petitioner raised this claim on direct appeal to the Appellate Division. The Appellate Division rejected Petitioner's contention on the merits and leave to appeal was denied. D'Antuono, 306 A.D.2d at 890.

In Stone v. Powell, the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim," the federal courts could not, on a state prisoner's petition for habeas corpus relief, consider a claim that evidence obtained from an unconstitutional search or seizure should have been excluded at his trial. 428 U.S. 465, 494, (1976). The Second Circuit has noted that Stone requires only that "the state have provided the *opportunity* to the state prisoner for full and fair litigation of the Fourth Amendment claim." Gates v. Henderson, 568 F.2d 830, 839 (2d Cir. 1977) (emphasis added). Under this standard, federal courts may review Fourth Amendment claims for habeas corpus relief in only two extraordinary instances: (1) "if the state provides no corrective procedures at all to redress Fourth Amendment violations," or (2) if "the state provides the process but in fact the defendant is precluded from utilizing it by reason of an unconscionable breakdown in that

15

process. . . ." Id. at 840; accord Capellan v. Riley, 975 F.2d 67, 70 (2d Cir. 1992).

A petitioner receives a "full and fair opportunity" to litigate his Fourth Amendment claim where the state provides a "'statutory mechanism' for suppression of evidence tainted by an unlawful search and seizure." McPhail v. Warden, Attica Corr. Facility, 707 F.2d 67, 69 (2d Cir. 1983). New York clearly affords defendants the requisite corrective procedures. See N.Y. C.P.L. § 710.10 et seq.; see also Capellan, 975 F.2d at 70 (noting that "federal courts have approved New York's procedure for litigating Fourth Amendment claims, embodied in N.Y. Crim. Proc. Law § 710.10 *et seq.* (McKinney 1984 & Supp.1988) as being facially adequate").

Petitioner may not raise his Fourth Amendment claim on habeas review because he was provided with the opportunity to fully adjudicate this claim in state court. The record indicates that Petitioner's Fourth Amendment claim was reviewed three times by the state courts and each time was decided on the merits. Petitioner asserted his Fourth Amendment claim at the pre-trial Mapp hearing and the judge determined that the police had probable cause to enter the hotel room and that the seizure of the physical evidence was valid and proper. Specifically, the judge ruled that the Petitioner's tenancy had expired and that "he had no reasonable expectation that he had any rights to privacy and no Constitutional right of his was violated by anybody in law enforcement."

16

(Suppression Hearing Transcript, 100.) The Appellate Division affirmed the trial court's determination of this issue. D'Antuono, 306 A.D.2d at 890.

Moreover, Petitioner cannot demonstrate that an "unconscionable breakdown" occurred in the state courts. Petitioner alleges that an "unconscionable breakdown" occurred when the Appellate Division reserved decision on the Fourth Amendment claim and remitted the matter to the lower court for a hearing under § 30.30. See Petition, ¶22C, and Addendum, 3; Docket No. 3, Petitioner's Memorandum of Law, 22-23. The Second Circuit has held that an "unconscionable breakdown in the state's process must be one that calls into serious question whether a conviction is obtained pursuant to those fundamental notions of due process that are at the heart of a civilized society." Cappiello v. Hoke, 698 F. Supp. 1042, 1050 (E.D.N.Y. 1988), aff'd, 852 F.2d 59 (2d Cir. 1988); see also, Capellan, 975 F.2d at 70. Merely reserving decision on appeal on Petitioner's Fourth Amendment and other claims, reversing the conviction on other grounds and ordering a new trial, and rejecting Petitioner's Fourth Amendment claim on appeal from the conviction following the retrial does not, in any way, amount to an "unconscionable breakdown" in the process.

Petitioner's Fourth Amendment claim is premised on a disagreement with the state court's findings regarding suppression. However, the Second Circuit has explicitly held that, even if the

17

state court erroneously decided the issue, "a petitioner cannot gain federal review of a fourth amendment claim simply because the federal court may have reached a different result." Capellan, 975 F.2d at 71. Thus, this Court is precluded from collaterally reviewing on habeas review Petitioner's Fourth Amendment claim. Accordingly, this claim must be denied.

V.  **Conclusion**

For the reasons stated above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. Because petitioner has failed to make "a substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability. See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000). The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. Coppedge v. United States, 369 U.S. 438 (1962).

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with United States Court of Appeals for the Second Circuit in accordance

with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

**SO ORDERED.**

S/Michael A. Telesca

_____
MICHAEL A. TELESCA
United States District Judge

Dated:   November 9, 2009
         Rochester, New York